UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

MARTREY D. BASS,
  Petitioner,

vs.        Case No.:  4:20cv506/TKW/ZCB

RICKY D. DIXON,
  Respondent.
_____/

## **REPORT AND RECOMMENDATION**

Petitioner is serving a fifty-year sentence in the Florida Department of Corrections for kidnapping and robbing a young woman. He has petitioned this Court for a writ of habeas corpus under 28 U.S.C. § 2254. (Docs. 49, 49-1). The petition seeks relief on seven grounds.[1] Respondent has answered, and Petitioner has replied. (Docs. 55, 62). For the reasons below, Petitioner is not entitled to habeas relief.[2]

---

[1] Petitioner has since moved to dismiss his seventh ground (Doc. 61), and the Court recommends granting that motion. Thus, the Court will limit its discussion to the first six grounds.

[2] The Court believes this matter may be resolved based on the pleadings and attachments without an evidentiary hearing. Rule 8(a), Rules Governing Section 2254 Cases.

# I.    Factual Background

It was late at night on August 17, 2013.  Florida A&M University student Michaela Yant was walking down the street alone.  (Doc. 55-1 at 249-50).  As Ms. Yant was walking, she became scared upon realizing she was in a bad neighborhood.  (*Id*.).  So, she called and asked her ex-boyfriend to come get her.  (*Id*.).

While Ms. Yant waited for her ex-boyfriend, a man suddenly grabbed her from behind and started dragging her toward a car.  (*Id*. at 250-52).  The man opened the car's trunk, picked up Ms. Yant, and threw her inside.  (*Id*. at 252).  As Ms. Yant resisted, the man bit her on the arm, took her cell phone, and slammed the trunk lid closed.  (*Id*. at 253).  The car then drove away with Ms. Yant locked in the trunk.  (*Id*.).  Ms. Yant (with amazing presence of mind) remembered learning in a high school automotive class that cars often have an emergency trunk latch.  (*Id*. at 253-54).

Based on that knowledge, Ms. Yant searched the dark trunk for a latch.  (*Id*. at 254).  She eventually located one and pulled it.  (*Id*.).  Next,

she pushed the trunk open and dove out as the car was moving.  (*Id*.).

Ms. Yant hit the pavement and slid across it—causing injuries to her

knees and thighs.  (*Id*. at 254-55).  She popped up from the pavement and

began running as she screamed for help.  (*Id*. at 256).  While Ms. Yant

was running and screaming, her ex-boyfriend pulled up in his car.  (*Id*.).

Ms. Yant told him what had happened, and she used his phone to make

a frantic 911 call.  (*Id*. at 258).

A Tallahassee police officer responding to the 911 call found some

of Ms. Yant's belongings scattered on a nearby road.  (*Id*. at 310-11).  The

phone that Ms. Yant's assailant had taken from her was an iPhone.

Using the "find my iPhone" feature, Ms. Yant was able to track the

location of her iPhone using her iPad.  (*Id*. at 321).  The police then used

the information from Ms. Yant's cell phone carrier to obtain more

information regarding the location of her iPhone.  (*Id*. at 339-352).  Based

on the tracking information, the police surveilled the area where the

phone appeared to be located.    (*Id*. at 352).    While conducting

surveillance, an officer saw a man (later identified as Petitioner's brother,

Dexter Williams) toss an item into the grass. (*Id*. at 387). The officer retrieved the item, and it was Ms. Yant's cell phone. (*Id*.).

The police subsequently executed a search warrant at the house where Mr. Williams and Petitioner lived. (*Id*. at 402-03, 426). During the warrant's execution, Petitioner's mother told the police what room Petitioner stayed in and which cars belonged to him. (*Id*. at 403). The police found Ms. Yant's purse in a car belonging to Petitioner. (*Id*. at 421-22). Petitioner also met the description that Ms. Yant had provided to the police. (*Id*. at 403). Ms. Yant was later shown a photo lineup. (*Id*. at 270-72). She identified, with 85% certainty, Petitioner as her attacker. (*Id*. at 271). And she affirmatively stated that Mr. Williams (whose photo was also in the lineup) was not her attacker. (*Id*.).

Petitioner was subsequently charged with kidnapping and robbery. While in custody pending trial, Petitioner made a recorded jail call that contained incriminating information. (*Id*. at 477-78). The case proceeded to a jury trial in Leon County Circuit Court. Ms. Yant testified and identified Petitioner as the assailant. (*Id*. at 274). On April 9, 2015, the jury convicted Petitioner as charged. (*Id*. at 573-74). The judge declared

4

Petitioner a habitual felon and sentenced him to fifty years' imprisonment for kidnapping and a concurrent term of thirty years' imprisonment for robbery. (*Id.* at 111-20).

## II.    Procedural History

Petitioner appealed to Florida's First District Court of Appeal ("First DCA"). (Doc. 55-2 at 2-35). That court affirmed. (Doc. 55-2 at 69). Next, Petitioner filed a habeas petition in the First DCA, alleging ineffective assistance of appellate counsel. (Doc. 55-3 at 460-65). The First DCA denied the petition. (*Id.* at 494-95, 501).

Petitioner also repeatedly sought postconviction relief in the state trial court. He moved for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 55-2 at 77-117). The trial court held an evidentiary hearing on Petitioner's eleven claims. (*Id.* at 244, 397-491). The trial court ultimately denied the Rule 3.850 motion. (*Id.* at 386-87, 482-90). Petitioner appealed. (*Id.* at 494-548). The First DCA affirmed. (*Id.* at 577-78, 588)).

While the Rule 3.850 appeal was pending, Petitioner filed four other trial court motions for postconviction relief. Two were Rule 3.850

motions, one was a motion to correct illegal sentence under Rule 3.800, and the other was a motion under Rule 3.850(b)(1).  (Doc. 55-2 at 636-42; Doc. 55-3 at 2-38, 80-119, 159-61; Doc 55-2 at 590-94; Doc. 55-3 at 229-65).  The trial court denied all four motions.  (Doc. 55-2 at 596-97; Doc. 55-3 at 285-86; Doc. 55-2 at 636-42; Doc. 55-3 at 2-38, 80-119, 159-61).  Petitioner appealed, identifying the appealed order as "the final order denying this Defendant's Motion for Postconviction Relief."  (Doc. 55-3 at 312).  The First DCA affirmed.  (*Id.* at 455-56, 458).

Petitioner then moved his postconviction efforts to federal court by filing a habeas corpus petition under 28 U.S.C. § 2254.  (Doc. 1).  He has amended the petition three times, and the third amended petition is the operative one. (Doc. 49).  That petition presents seven grounds for relief.[3] Five of the grounds involve ineffective assistance of counsel claims, and one involves a *Brady* claim.  Each ground will be discussed below, but first the Court will summarize the legal standard for § 2254 petitions.

---

[3] As previously mentioned, Petitioner has moved to voluntarily dismiss the seventh claim.  (Doc. 61).

## III.   The Legal Standard for 28 U.S.C. § 2254 Petitions

When considering a state prisoner's § 2254 habeas petition, a federal court is not typically sitting as an appellate court with the mandate of correcting errors that may have occurred in the state court. *See Shinn v. Ramirez*, 596 U.S. 366, 377 (2022) (explaining that a federal habeas proceeding is not "a substitute for ordinary error correction through appeal").  Instead, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal habeas court applies a "highly deferential standard of review for evaluating state-court rulings [on the merits], which demands that state-court decisions be given the benefit of the doubt."  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citation omitted).  Under AEDPA, a federal court may invalidate a state criminal conviction only if the state court decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)-(2).  The state court's factual determinations "shall be presumed to be correct,"

and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

"[T]o be contrary to clearly established federal law, the state court must either (1) apply a rule that contradicts the governing law set forth by Supreme Court case law, or (2) reach a different result from the Supreme Court when faced with materially indistinguishable facts." *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010) (cleaned up). An "unreasonable application" of federal law occurs "if the state court correctly identifies the governing legal principle from [the Supreme Court's] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). "To meet [the unreasonable application] standard, a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Shinn v. Kayer*, 141 S. Ct. 517, 523 (2020) (cleaned up). Rather, the state court's application of federal law must be "so obviously wrong that its error lies beyond any possibility for fairminded disagreement." *Id.* (cleaned up). This standard reflects that the "writ of habeas corpus is an extraordinary remedy that guards only against extreme malfunctions in

8

the state criminal justice systems." *Ramirez*, 596 U.S. at 377 (cleaned up).

## IV.  Discussion

**A.  Ground One (verbatim): "Whether the Florida State Postconviction Court Erred in denying Ground Seven concerning failure to object to the sentencing Judge remarking of Appellant's lack of Remorse in violation of the 5, 6, and 14 Amendments Due Process Right of the constitution."**

Petitioner first claims that his trial counsel was ineffective by not objecting when the sentencing judge commented on Petitioner's lack of remorse.  (Doc. 49 at 8; Doc. 49-1 at 5-10).  As support for this claim, Petitioner argues that under Florida law (as it existed at the time of sentencing) a sentencing judge could not consider a defendant's lack of remorse.  (Doc. 49-1 at 5-8).  Nonetheless, Petitioner says his attorney failed to object and that failure led to Petitioner receiving a longer sentence.

Ineffective assistance of counsel claims are governed by the well-worn standard found in *Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a *Strickland* claim, a petitioner must show that (1) counsel's performance was constitutionally deficient, and (2) prejudice resulted.

9

*Strickland*, 466 U.S. at 687.  Under the deficiency prong, the inquiry focuses on "whether counsel's assistance was reasonable considering all the circumstances."  *Id.* at 688.  Trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.  As for the prejudice prong, the inquiry focuses on whether the petitioner has shown there is a "reasonable probability" that the outcome would have been different absent counsel's deficient performance.  *Id.* at 694.  To make the prejudice showing, the "likelihood of a different result must be substantial, not just conceivable."  *Harrington v. Richter*, 562 U.S. 86, 112 (2011).[4]

---

[4] Both the *Strickland* standard and the standard for relief under § 2254 are "highly deferential."  *Richter*, 562 U.S. at 105.  And when—in a case like the current one—"the two apply in tandem, review is doubly" deferential.  *Id.* (cleaned up).  The Supreme Court has warned that "habeas courts must guard against the danger of equating unreasonableness under *Strickland*['s]" deficient performance prong with "unreasonableness under § 2254(d)."  *Id.*  Thus, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*

### 1. Petitioner's sentencing hearing

Understanding Petitioner's first claim requires a look at what happened during the sentencing hearing. Because of Petitioner's habitual felon status, he faced up to thirty years of imprisonment on the robbery charge and up to life imprisonment on the kidnapping charge. The prosecutor argued that Petitioner was a dangerous recidivist who deserved a life sentence. Additionally, the prosecutor argued that Petitioner expressed no remorse and had referred to the victim as "a bitch" when questioned about his involvement in the crime. (Doc. 55-1 at 208).

Defense counsel urged the court to impose something "way short of a life sentence." (*Id.* at 202). In addition to the arguments of defense counsel, Petitioner chose to speak in allocution. He insisted that the jury's guilty verdict was caused by the prosecution's failure to disclose exculpatory evidence, as well as defense counsel's poor performance. (*Id.* at 204-05, 211). Petitioner denied responsibility for the crime. (*Id.*).

After hearing from the attorneys and Petitioner, the judge imposed a sentence of fifty years' imprisonment on the kidnapping charge and a

11

concurrent thirty years' imprisonment on the robbery charge. When explaining the basis for the sentence, the judge mentioned Petitioner's lack of remorse and failure to accept responsibility for his repeated violations of the law. (*Id*. at 213-14). The judge also highlighted Petitioner's "escalating" criminal activity, as well as the crime's impact on the victim. (*Id*.). Petitioner's attorney did not object to the judge's explanation for the sentence imposed.

### 2. Petitioner's Rule 3.850 motion and hearing

In his Rule 3.850 motion, Petitioner argued that trial counsel performed ineffectively by not objecting to the judge's comments about Petitioner's lack of remorse. The state postconviction court held an evidentiary hearing on that issue, applied *Strickland*, and found that Petitioner had shown neither deficient performance nor prejudice. (*Id*. at 386-87; Doc. 55-2 at 485-86). Petitioner appealed, and the First DCA affirmed. (Doc. 55-2. at 577-78).

### 3. Analysis of Petitioner's claim for habeas relief

Having summarized the applicable law and the state court proceedings, the Court now turns to the relevant question: Was the state

court's denial of Petitioner's ineffective assistance of counsel claim contrary to or an unreasonable application of clearly established Supreme Court precedent? The answer is "no."

Here is why. As mentioned above, to prevail on an ineffective assistance of counsel claim a petitioner must show deficient performance and prejudice. Regardless of whether Petitioner's attorney performed deficiently by not objecting to the judge's lack of remorse comments, Petitioner cannot show prejudice. Two binding decisions compel that result. One of those decisions is from the Supreme Court (*Lockhart v. Fretwell*, 506 U.S. 364 (1993)), and the other is from the Eleventh Circuit (*Guzman v. Sec'y, Dept. of Corr.*, 73 F.4th 1251 (11th Cir. 2023)). Both *Lockhart* and *Guzman* hold that an ineffective assistance claim cannot be based on an argument that may have been successful if raised in state court originally but that would be unsuccessful today because of an intervening change in the law.

Let's begin with *Lockhart*. The petitioner claimed his attorney was ineffective by not making a sentencing objection that would have been successful under then-binding precedent. 506 U.S. at 367-68. By the

13

time the petitioner filed his federal habeas case, however, the once-binding precedent had been overruled. *Id.* Nonetheless, the district court granted habeas relief (and the federal appellate court affirmed) on the basis that had petitioner's counsel made the objection at sentencing it would have been successful under then-existing law. *Id.* The Supreme Court disagreed and reversed. *Id.* at 373.

In reversing, the *Lockhart* Court explained that a *Strickland* prejudice analysis should not focus "solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable." *Id.* at 369. Rather, prejudice can only be found if the result of the proceeding was "unfair or unreliable." *Id.* And according to the Supreme Court, the "result of the sentencing proceeding in the present case" was not rendered "unfair or unreliable" by counsel's failure to object based on a legal principle that was valid at the time of sentencing but was invalid at the time the petitioner sought federal habeas relief. *Id.* at 371. As Justice O'Connor put it in her concurrence, "the court making the prejudice determination may not consider the effect of an objection it knows to be wholly meritless

14

under current governing law, even if the objection might have been considered meritorious at the time of its omission." *Id*. at 374 (O'Connor, J., concurring).

The Eleventh Circuit in *Guzman* recently applied *Lockhart* to deny habeas relief in a situation involving a change in Florida law. The petitioner in *Guzman* argued that counsel was ineffective for not objecting to a jury instruction that misstated Florida law as it existed at the time of trial. *Guzman*, 73 F.4th at 1253. Rejecting that argument, the Eleventh Circuit found that the petitioner had not shown prejudice under *Lockhart* because the relevant Florida law changed in the years between the trial and the habeas proceeding. *Id*. According to *Guzman*, the petitioner's attorney "may have erred in the past [by failing to object to the jury instruction], but that error does not prejudice [the petitioner] in the present." *Id*. When deciding the prejudice question, the *Guzman* court made clear that current law governs, rather than the law in effect at the time of trial. *Id*. at 1256.

Petitioner's argument here meets the same fate as those made in *Lockhart* and *Guzman*. At the time of Petitioner's sentencing, there was

15

First DCA precedent prohibiting sentencing judges from considering a defendant's lack of remorse. *See e.g.*, *Dumas v. State*, 134 So.3d 1048, 1048 (Fla. 1st DCA 2013) (stating that "[a] lack of remorse or a failure to accept responsibility may not be considered by the trial court when fashioning an appropriate sentence"). But the years have not been a friend to that First DCA precedent.

In 2019, the en banc First DCA overruled *Dumas* and the other decisions that prohibited consideration of a defendant's lack of remorse at sentencing. *Davis v. State*, 268 So. 3d 958, 961 (Fla. 1st DCA 2019) (en banc). The Florida Supreme Court subsequently endorsed the en banc First DCA's decision. *Davis v. State*, 332 So. 3d 970, 978 (Fla. 2021). According to the Florida Supreme Court in *Davis*, when a defendant voluntarily delivers an allocution that blames others, alleges misconduct, and denies responsibility, a sentencing judge is "under no obligation to ignore such statements and [does] not err in considering those statements." *Id*. at 977.

Based on the *Davis* decisions from the en banc First DCA and the Florida Supreme Court, under current Florida law, the sentencing judge

in Petitioner's case did not err by considering that Petitioner blamed others and lacked remorse in his allocution.[5]    Under *Lockhart* and *Guzman*, current law governs the Court's prejudice inquiry.  Given that "the legal basis for the objection [Petitioner says counsel should have made] no longer exist[s] because the necessary precedent ha[s] been overruled," *Guzman*, 73 F.4th at 1255, Petitioner has not shown that the state court's denial of his ineffective assistance claim was contrary to or an unreasonable application of clearly established Supreme Court precedent.  Thus, Petitioner is not entitled to habeas relief on Ground One.

**B.    Ground Two (verbatim): "Petition for Writ of Habeas corpus based on ineffective Assistance of Appellate for failing to challenge on direct Appeal, Trial courts consideration of**

---

[5] There would have been no federal constitutional basis for Petitioner's counsel to object regarding the sentencing judge's consideration of a lack of remorse.  It is well established under federal law that a sentencing court may consider an allocuting defendant's lack of remorse.  *See, e.g.*, *United States v. Bryant*, 618 F. App'x 586, 590 (11th Cir. 2015) (explaining that "where a defendant chooses to allocute. . .and repeatedly denies any wrongdoing, the court is permitted to consider the defendant's freely offered statements indicating a lack of remorse at sentencing"); *United States v. Stanley*, 739 F.3d 633, 652 (11th Cir. 2014) (holding that if a defendant allocutes and expresses a lack of remorse, the district court is permitted to consider that when determining the appropriate sentence).

**Petition lack of remorse and failure to accept responsibility, in violation of the 6, and 14 Due process Constitution Rights."**

In Ground Two, Petitioner claims ineffective assistance by his appellate counsel for failing to challenge the sentencing judge's consideration of Petitioner's lack of remorse. (Doc. 49 at 10; Doc. 49-1 at 10-11). This ground is an offshoot of Petitioner's first ground. And it is similarly unsuccessful.

For the same reason that Petitioner could not show prejudice regarding trial counsel's failure to object, Petitioner cannot show prejudice regarding appellate counsel's failure to raise the issue on appeal. *See Guzman*, 73 F.4th at 1256-57 (applying *Lockhart*'s reasoning to ineffective assistance of appellate counsel claims). Because Florida law currently allows consideration of an allocuting defendant's lack of remorse, the state court's denial of Petitioner's ineffective assistance of appellate counsel claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent. Thus, Petitioner is not entitled to habeas relief on Ground Two.

**C.    Ground Three (verbatim): "Newly Discovered Evidence and *Brady* violation and *Giglio* 4, 5, 6, 14 Due process of Constitution Rights."**

As his third ground for habeas relief, Petitioner argues that the prosecution failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  The evidence Petitioner claims was not disclosed involves law enforcement's use of a cell-simulator device known as a "Stingray."[6]  According to Petitioner, if he had known that the police used a Stingray, then he would have filed a motion to suppress because there was no warrant authorizing the device's use.  Additionally, Petitioner suggests, without much elaboration, that knowledge of the Stingray "could have changed the strategy of his defense."  (Doc. 49-1 at 18).

There are some potentially complex procedural questions presented by this claim.  Those include: (1) whether Respondent has waived a

---

[6] "Stingray" is a particular brand of a cell site simulator device.  *See Triggerfish, Stingrays, and Fourth Amendment Fishing Expeditions*, 66 Hastings L.J. 183, 184 (2014) (discussing cell site simulators). In basic terms, a cell site simulator mimics a cell phone tower and tricks nearby cell phones into connecting to the device instead of a tower.  *See United States v. Wright*, No. CR419-149, 2023 WL 6566521, at *19 n. 23 (S.D. Ga. May 25, 2023) (explaining the operation of cell site simulators).

defense that this claim is procedurally barred because the state postconviction court rejected it on an independent and adequate state procedural ground?; (2) if Respondent did not waive the procedural bar defense, then does it apply or was the state court's procedural ruling that Petitioner's claim did not involve "newly discovered evidence" under Rule 3.850(b)(1) so intertwined with the merits of his federal *Brady* claim that the state procedural bar cannot be applied[7]?; and (3) whether the state court's alternative (and unexplained) conclusion that the *Brady* claim was "meritless" was an adjudication on the merits subject to AEDPA deference, or would it be reviewed de novo instead?[8]

Thankfully, the Court need not answer those thorny procedural questions today. That is so because a habeas court may "skip over" procedural default issues if a claim "would fail on the merits in any

---

[7] The Eleventh Circuit recently found that the independent and adequate state procedural bar did not apply to a *Brady* claim because the state court's procedural ruling was "intertwined with an interpretation of federal law." *Rossell v. Macon SP Warden*, No. 21-13525, 2023 WL 34103, at *4 (11th Cir. Jan. 4, 2023).

[8] *See Conner v. Hall*, 645 F.3d 1277, 1292 (11th Cir. 2011) (explaining that if a claim decided purely on procedural grounds in state court was not barred by procedural default, then "federal court review is *de novo*" because the "claim was never adjudicated on the merits in state court").

event." *Dallas v. Warden*, 964 F.3d 1285, 1307 (11th Cir. 2020). The Court will take this approach here—it will "skip over the difficult procedural default questions and cut to the heart of the matter," *id.* at 1307 n. 4, because Petitioner's claim fails even under de novo review. And the Supreme Court has held that federal courts may deny habeas relief "by engaging in de novo review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on de novo review." *Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010). Thus, the Court will proceed to explain why Petitioner's *Brady* claim fails under de novo review.

Let's start with the standard that governs *Brady* claims. To establish a *Brady* violation, a petitioner must show that "(1) the prosecution suppressed evidence, (2) the evidence suppressed was favorable to the defense or exculpatory, and (3) the evidence suppressed was material." *Felker v. Thomas*, 52 F.3d 907, 910 (11th Cir. 1995). As explained below, Petitioner's claim fails at the first two prongs.

21

### 1. The Stingray information was not exculpatory evidence.

"The *Brady* rule is based on the requirement of due process." *United States v. Bagley*, 473 U.S. 667, 675 (1985). The rule does not require the prosecutor to deliver her entire file to defense counsel. *Id*. Rather, what *Brady* requires is the disclosure of exculpatory evidence— i.e., "evidence favorable to the accused." *Id*. at 675. Thus, "[i]nculpatory information is not subject to *Brady* disclosure." *United States v. Ruiz*, 698 F. App'x 978, 986 (11th Cir. 2017). So, there can be no *Brady* violation if the information allegedly withheld by the prosecutor inculpated instead of exculpated the defendant. *See United States v. Allen*, 353 F. App'x 352, 356 (11th Cir. 2009) (rejecting a *Brady* claim because the undisclosed information was "not exculpatory, but rather, actually inculpatory"); *see also Chilton v. Sec'y, Fla. Dep't of Corr.*, No. 5:11cv45-RH/GRJ, 2014 WL 1246134, at *10 (N.D. Fla. Mar. 25, 2014) (finding no *Brady* violation because the information was "inculpatory, rather than exculpatory and, therefore, *Brady* does not apply").

Here, Petitioner claims the prosecution violated *Brady* by failing to disclose prior to trial that investigators used a Stingray device to help

locate the victim's cell phone. But the information obtained by the Stingray device was not exculpatory. The information was inculpatory—it helped lead police to the victim's phone, which was an important piece of evidence for the prosecution. Indeed, Petitioner's own argument demonstrates the inculpatory nature of the Stingray information. Petitioner is not arguing that the Stingray information was favorable to him. He is not claiming that the verdict would have been different had the jury heard about the Stingray information. Petitioner is actually arguing the *opposite*. His argument is that the Stingray information should have been excluded under the Fourth Amendment, and that he was denied the opportunity to seek such exclusion by its late disclosure. Put another way, Petitioner is arguing that the Stingray information should have been *kept out* of the jury room.

The fact that Petitioner did not want the jury to hear the Stingray information proves that the information was inculpatory and not exculpatory. *See United States v. Burnett*, 316 F. Supp. 3d 424, 432 (D.D.C. 2018) (rejecting a *Brady* claim regarding the failure to disclose alleged use of Stingray device and explaining that any information

produced by the device was not exculpatory evidence). After all, no rational criminal defendant would want to suppress information that tended to show he was not guilty. The essence of *Brady* is that the jury should not be deprived of information that supports a defendant's claim of innocence. Here, on the other hand, Petitioner is arguing that the jury should have been deprived of information that tended to show his guilt. Thus, Petitioner's *Brady* argument should be rejected.

To the extent Petitioner is arguing that *Brady* requires the disclosure of information that a defendant could use to seek suppression of evidence under the Fourth Amendment's fruit-of-the-poisonous-tree doctrine, such an argument lacks merit. *See Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 n.9 (11th Cir. 2009) (noting a lack of authority to support the argument that "*Brady* applies outside the realm of exculpatory evidence and extends to evidence useful to the defense in a fruit-of-the-poisonous-tree quest"). In fact, the Eleventh Circuit recently addressed this issue in *United States v. Laines*, 69 F.4th 1221, 1232 (11th Cir. 2023). The defendant in *Laines* argued that the prosecution violated *Brady* by failing to disclose information that, had it been timely disclosed,

may have provided the basis for a suppression motion. *Id*. Rejecting that argument, the Eleventh Circuit found no *Brady* violation because the undisclosed information was "not material either to guilt or punishment as required under *Brady*." *Id*. (cleaned up). As *Smith* and *Laines* demonstrate, *Brady* was not violated by the prosecution failing to disclose information that could have been used by Petitioner to file a motion to suppress under the Fourth Amendment.[9]

---

[9] For the sake of completeness, it bears mentioning that Petitioner would have had no basis for seeking suppression of the Stingray evidence under the Fourth Amendment. "Fourth Amendment rights are personal rights that may not be asserted vicariously." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (cleaned up). To have standing to raise a Fourth Amendment claim, a defendant must have a reasonable expectation of privacy in the area searched or the item seized. *United States v. King*, 509 F.3d 1338, 1341 (11th Cir. 2007). Here, Petitioner would have lacked standing to challenge the Stingray evidence because he had no reasonable expectation of privacy that was violated by the device's use. The cell phone that the Stingray device helped find was not Petitioner's phone—it was a stolen phone. Thus, to the extent the Stingray device "searched" the phone and/or led to the phone's seizure, Petitioner had no reasonable expectation of privacy in the phone. *See Byrd v. United States*, 584 U.S. ___, 138 S. Ct. 1518, 1529 (2018) (explaining that "[n]o matter the degree of possession and control," a thief does not have a reasonable expectation of privacy in stolen property). Additionally, the Stingray device did not reveal Petitioner's location information (something he would have had a reasonable expectation of privacy in); rather, it revealed the location information of Petitioner's brother who was in possession of the phone and then discarded it.

25

### 2. The Stingray information was not withheld under *Brady*.

Even if the Stingray evidence was exculpatory, there is no merit to Petitioner's *Brady* claim because the Stingray evidence was disclosed by the prosecution in time for Petitioner to make use of it. The "typical *Brady* claim involves the discovery *after* trial of information which had been known to the prosecution but unknown to the defense." *United States v. Knight*, 867 F.2d 1285, 1289 (11th Cir. 1989) (cleaned up). That, however, is not what happened here.

Petitioner became aware of the Stingray device in the middle of his trial. So, Petitioner's *Brady* claim "involves mere delay in the transmission of the material to the defense and not outright omission that remained undiscovered until after trial." *Id*. When a *Brady* claim is based on delayed disclosure as opposed to outright nondisclosure, the question is whether Petitioner has established "that the disclosure came so late that [the information] could not be effectively used" in his defense at trial. *Id*. Petitioner has failed to make that showing here.

A review of the trial transcript reveals that the use of the Stingray device came out during the testimony of Sgt. Corbitt. During cross

examination, Petitioner's counsel asked Sgt. Corbitt whether he used "any other type of technology" to determine the location of Ms. Yant's phone. (Doc. 55-1 at 365). That question prompted a sidebar, where the trial judge remarked that it "[s]ounds like we're looking for the Stingray." (*Id.*). In the sidebar discussion, Petitioner's attorney stated that the prosecution had not disclosed its use of a Stingray device. (*Id.* at 366-67). The trial judge then excused the jury, and Petitioner's attorney questioned Sgt. Corbitt regarding the use of a Stingray device. (*Id.* at 367-373). Sgt. Corbitt described how a Stingray device worked, admitted that one had been used to help locate Ms. Yant's phone, and explained that the police had informed the prosecutor about the use of the Stingray device. (*Id.* at 367-68).

After questioning Sgt. Corbitt, defense counsel argued that a mistrial and/or exclusion of the cell phone location information was warranted because the prosecution had not disclosed the use of the Stingray device before trial. (*Id.* at 374). The trial judge admonished the prosecution for not disclosing the Stingray device's use earlier, but he found no basis for a mistrial and/or exclusion of the cell phone location

27

information. (*Id.* at 376-77). In support of that conclusion, the trial judge explained that Petitioner had not shown prejudice. (*Id.* at 377, 379-80). More specifically, the trial judge said, "I can't see any specific prejudice that has occurred based upon the fact that the device was used to find a phone on the person of a third party that's not a defendant in this case." (*Id.* at 378). The jury was then brought back in, and defense counsel continued his cross examination of Sgt. Corbitt. (*Id.* at 380).

As the above demonstrates, the Stingray device's use was disclosed during Petitioner's trial. Petitioner's attorney was able to question Sgt. Corbitt regarding the Stingray device. *See Laines*, 69 F.4th at 1231 (finding no *Brady* violation where defense counsel was able to cross examine the witness after receiving the late disclosure of information regarding that witness's conduct). Petitioner's attorney could have requested the recalling of any prior witnesses that he wished to question about the Stingray device. *See Knight*, 867 F.2d at 1289 (stating that the defendant's attorney had an opportunity to recall a witness after receiving a late disclosure of information). And Petitioner's counsel had the ability to discuss the Stingray device's use during his closing

argument. Although disclosure of the Stingray device's use "should have come sooner," Petitioner has "failed to demonstrate that the disclosure came so late that it could not be effectively used; and thus [Petitioner] cannot show prejudice." *Id*.; *see also United States v. Lawson*, 368 F. App'x 1, 5 (11th Cir. 2010) (recognizing that *Brady* is not violated "when the evidence in the government's possession was disclosed in enough time to be probed by the defense at trial"); *United States v. Almendares*, 397 F.3d 653, 664 (8th Cir. 2005) (explaining that *Brady* is not violated "if the information is furnished before it is too late for the defendant to use it at trial"). Accordingly, there is no merit to Petitioner's claim that the late disclosure of the Stingray device's use violated *Brady*.

**D.    Ground Four (verbatim):    "Whether the postconviction court erred in denying Ground Six of the petition, failure to object to hearsay from Albert Stephens that he could not provide an alibi for Appellant and Appellant was with him at the time of the robbery and kidnapping.  In violation of the 6 and 14 Amendments due process right of the United States Constitution."**

Petitioner's fourth ground for relief is another ineffective assistance of counsel claim. In this one, Petitioner faults his trial counsel for not objecting to hearsay evidence introduced during the testimony of Inv.

29

Robert Todd of the Tallahassee Police Department. (Doc. 49 at 12; Doc. 49-1 at 19-26). Petitioner made this argument to the state postconviction court, and it was rejected. (Doc. 55-2 at 96, 485). The First DCA affirmed that decision. (*Id.* at 577). As explained below, the state court's decision was neither contrary to nor involved an unreasonable application of the *Strickland* standard.

To understand Petitioner's claim, it is necessary to explain what happened during Inv. Todd's trial testimony. Inv. Todd testified that Petitioner gave him the names of six potential alibi witnesses. (Doc. 55-1 at 495-96). Inv. Todd was unable to locate four of those people, and he spoke with two of them. (*Id.* at 495). One of the people he spoke with was Cetoria Scott. (*Id.* at 496). Inv. Todd explained that Ms. Scott told him to speak with Albert Stephens. (*Id.*). The following dialogue then occurred between the prosecutor and Inv. Todd:

> Q: "And did you interview Mr. Stephens?"
>
> A: "I did."
>
> Q: "And where was that?"
>
> A: "I was at the Leon County Jail."

> **Q:  "And, based on your follow-up investigation, was anyone able to provide an alibi for the defendant?"**
>
> **A:  "No."**

(*Id.* at 496-97).

Petitioner takes issue with his attorney's failure to lodge a hearsay objection to the bolded question and answer above.  He claims the failure to object was deficient performance that caused prejudice.  Petitioner's trial counsel, Attorney Collins, testified at the Rule 3.850 hearing.  (Doc. 55-2 at 426-28).  Attorney Collins stated that he did not object because he was unsure the objection would be sustained, and he feared that an objection would call more attention to the testimony.  (*Id.*).  Attorney Collins acknowledged that after the trial was over, he second-guessed his decision not to object.  (*Id.* at 447-49).  And Attorney Collins said he advised Petitioner to raise the issue on appeal.  (*Id.*).  Petitioner followed that advice, raised the issue on appeal, and it was summarily rejected by the First DCA.  (Doc. 55-2 at 27-32).

Similarly, the state postconviction court found no merit in Petitioner's claim that Attorney Collins provided ineffective assistance

by failing to object to Inv. Todd's testimony.  In reaching that conclusion, the state postconviction court found that Attorney Collins "decided to make a strategic decision not to object and to not highlight [the lack of an alibi witness] in front of the jury." (Doc. 55-2 at 485).  The state postconviction court further found that the "issue was argued as fundamental error on appeal" and rejected. (*Id.*).  Thus, the court concluded that "there's no deficient performance and no prejudice." (*Id.*). That conclusion was affirmed by the First DCA. (*Id.* at 577-78).

Because the state postconviction court rejected Petitioner's ineffective assistance claim on the merits, AEDPA deference applies.[10] So, Petitioner must show that the state court's rejection of his ineffective assistance claim was contrary to or an unreasonable application of *Strickland*.  He has not made that showing.

---

[10] Because the First DCA's decision was a summary affirmance, the Court looks through that decision to the state postconviction trial court's decision. *See Greene v. Fisher*, 565 U.S. 34, 40 (2011) (stating that a federal habeas court reviews "the last state-court adjudication on the merits); *see also Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (explaining that when the last state court decision on the merits lacks a statement of reasons, a federal court "look[s] through" the unexplained decision to the last reasoned state court decision).

As previously explained, the first prong of *Strickland* requires a showing that the attorney's performance was constitutionally deficient. The test for deficient performance "is not whether counsel could have done more; perfection is not required.  Nor is the test whether the best criminal defense attorneys might have done more." *Ward*, 592 F.3d at 1164 (cleaned up).  Instead, the inquiry focuses on "whether what counsel did was within the wide range of reasonable professional assistance." *Id.* (cleaned up).  Counsel will only be found to have performed deficiently if "no reasonable counsel would have taken the action." *Viers v. Warden*, 605 F. App'x 933, 942 (11th Cir. 2015).

When assessing counsel's performance, it must be remembered that trial strategy decisions will rarely form the basis for a finding of deficient performance. *See Nance v. Warden*, 922 F.3d 1298, 1302 (11th Cir. 2019) (recognizing that well informed "strategic choices" are "virtually unchallengeable").  As the Eleventh Circuit has explained, "counsel cannot be adjudged incompetent for performing in a particular way in a case, as long as the approach taken might be considered sound trial strategy." *Chandler v. United States*, 218 F.3d 1305, 1314 (11th Cir.

2000) (cleaned up).   That remains true, even if the strategy was unsuccessful.  *Id.* at 1316.

If a state court reviewing a *Strickland* claim has determined that counsel made a strategic decision, then that determination is a factual finding that is entitled to a presumption of correctness in a federal habeas proceeding. *Fotopoulos v. Sec'y, Dep't of Corr.*, 516 F.3d 1229, 1232-33 (11th Cir. 2008).   Rebuttal of that presumption requires "clear and convincing evidence."   *Id.* (citing 28 U.S.C. § 2254(e)(1)).   "By contrast, the question of whether the strategic. . . decision is reasonable enough to fall within the wide range of professional competence is an issue of law. . . ."  *Provenzano v. Singletary*, 148 F.3d 1327, 1330 (11th Cir. 1998)

When all that is unpacked and applied here, it means the Court must answer two questions.  First, it must answer whether Petitioner has come forward with clear and convincing evidence that rebuts the state court's factual finding that counsel's failure to object was a strategy decision.   Second, if the presumption has not been rebutted, then the Court must answer whether the state court's determination that

counsel's strategy decision was a reasonable one was contrary to or an unreasonable application of *Strickland*.

The answer to the first question is "no"—Petitioner has not come forward with clear and convincing evidence to rebut the state court's factual finding. That factual finding is supported by Attorney Collins' testimony during the evidentiary hearing, where he stated that he made a strategic decision not to object. Although Mr. Collins later second-guessed his decision, that does not mean it was not a strategic one. *See generally Viers*, 605 F. App'x at 942 (recognizing that "[w]hen assessing an attorney's decisions, we must make every effort to avoid the distorting effects of hindsight...and to evaluate the conduct from counsel's perspective at the time").

Moving then to the second question, the answer is also "no"—the state court's finding that Attorney Collins made a reasonable strategy decision was neither contrary to nor an unreasonable application of the *Strickland* test. As an initial matter, the state court applied the correct legal rule (i.e., the *Strickland* test). Thus, the state court's decision was not "contrary to" clearly established Supreme Court precedent. *See*

35

*Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (explaining that a state court decision is "contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law" as found by the Supreme Court) (cleaned up).

The focus of the Court's inquiry in this case, therefore, is whether the state court's decision involved an unreasonable application of *Strickland*. "To meet that standard, a prisoner must show far more than that the state court's decision was merely wrong or even clear error." *Kayer*, 141 S. Ct. at 523 (cleaned up). Instead, what is required is a showing that the state court's decision is so obviously wrong that "no fairminded jurist could agree" with it. *Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) (cleaned up). Petitioner has not met that rigorous standard.

Attorney Collins testified that he did not object when the statement was made because he was unsure the objection would be sustained, and he did not want to draw more attention to the testimony. (Doc. 55-2 at 427-28) ("I certainly didn't want to keep bringing more attention to [the testimony] in front of the jury anyway. And that's what you do when you

36

keep arguing about it.")   The state postconviction court found that Attorney Collins' failure to object was a "strategic decision" that did not amount to deficient performance.  (*Id*. at 485).  The Court cannot say that "no fairminded jurist could agree," *Holsey*, 694 F.3d at 1257, with the state court's conclusion.

The decision of whether to object is often a trial strategy decision. A competent defense attorney need not make every conceivable objection. *Engle v. Isaac*, 456 U.S. 107, 133-34 (1982).   Doing so can be counterproductive—objections may alienate jurors, may suggest to jurors that the attorney is hiding something, and (most relevant here) may draw the jurors' attention to a particular piece of unfavorable evidence.  *See generally* Eric E. Meyer, *The Use and Misuse of Objections in Civil Jury Trials*, Oregon State Bar Bulletin (Aug./Sept. 2008) (discussing the risks of objections and how objections may be perceived by jurors).  Thus, it can be a reasonable strategy for a defense attorney to withhold an objection to avoid drawing extra attention to particular testimony.  *See Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 807-08 (11th Cir. 2014) (finding it was "reasonable that counsel would not wish to draw

attention" to a piece of evidence by objecting).   Indeed, the Eleventh Circuit has recognized that "[d]ecisions about whether to object—and when, and in what form—are tactical choices consigned by *Strickland* to a lawyer's reasoned professional judgment." *Bates v. Sec'y, Fla. Dep't of Corr.*, 768 F.3d 1278, 1295 (11th Cir. 2014).

In this case, it was reasonable for Attorney Collins to make a strategic decision not to lodge a hearsay objection to the following question and answer during Inv. Todd's testimony:

> Q:  "And, based on your follow-up investigation, was anyone able to provide an alibi for the defendant?"
>
> A:  "No."

(Doc. 55-1 at 497).   The reasonableness of that strategy decision becomes more apparent when it is considered in context with the rest of Inv. Todd's testimony.   Prior to the exchange above, Inv. Todd had testified that Petitioner gave him a list of potential alibi witnesses.   That testimony was admissible as a party opponent statement.   *See* Fla. Stat. § 90.803(18) (excepting party opponent statements from the rule against hearsay).   The fact that Inv. Todd met with, or attempted to meet with,

38

those alibi witnesses posed no hearsay problem.   And Inv. Todd's testimony that Ms. Scott had given him Mr. Stephens name as somebody to talk with was admissible as non-hearsay because it was not offered to prove the truth of the matter asserted.   Rather, it was offered for the non-hearsay purpose of showing that the statement was made (regardless of whether it was true) and to explain Inv. Todd's subsequent investigative actions (i.e., why Inv. Todd contacted Mr. Stephens).   *See United States v. Padgett*, 503 F. App'x 884, 886 (11th Cir. 2013) (finding that a statement was non-hearsay because it was offered for the non-truth purpose of "explain[ing] the course of the officials' subsequent investigative actions"); *see also Kearse v. State*, 662 So. 2d 677, 684 (Fla. 1995) (finding no error in the admission of police dispatch transmissions because the prosecution "did not offer this evidence to prove the truth of the matter asserted, but rather to establish the sequence of events and to explain why the police investigation focused [on the defendant] as the perpetrator").

That brings us to the question and answer above regarding whether any of the people Inv. Todd spoke with provided an alibi for Petitioner.

39

When that question was asked, Attorney Collins faced a strategic dilemma.  He could object on the basis of hearsay and potentially succeed (as any experienced trial lawyer knows, success on a mid-trial evidentiary objection—especially a hearsay one[11]—is never guaranteed). If the objection succeeded, then Inv. Todd would not have answered the question.  *But* the jury would have had its attention called to the specific question.  And under the circumstances, any reasonable juror would have inferred that the answer Attorney Collins did not want the jury to hear was harmful to Petitioner.

If the objection was unsuccessful, then Inv. Todd would have been permitted to answer the question.  And by virtue of objecting, Attorney Collins would have risked "overemphasiz[ing] the statements to the jury by drawing attention to the statements as particularly damaging to the defense." *Viers*, 605 F. App'x at 944; *see also* Jonathan J. O'Konek, *To Object or not Object, That is the Question: A Criminal Law Practitioner's*

---

[11] The rule against hearsay is notoriously complex, which has led to it being described "as one of the law's most celebrated nightmares." Deborah Jones Merritt & Ric Simmons, Learning Evidence 443 (4th ed. 2018) (internal quotations omitted).

*Guide to the 'Five W's' of Evidentiary Objections*, 95 N.D. L. Rev. 155, 176 (2020) (recognizing that "an unintended consequence of objecting to a particular item at trial is that the jury pays closer attention to that particular objected to item"). Indeed, that is the specific concern Attorney Collins expressed at the evidentiary hearing when explaining his failure to object.

Perhaps some lawyers faced with same dilemma would have taken a different strategic approach than Attorney Collins. This is certainly a situation where "[r]easonable lawyers could disagree about the best way forward." *Bates*, 768 F.3d at 1297. But Attorney Collins "face[d] a choice where his conduct [was] neither directly prohibited by law nor directly required by law, which is to say: the choice is strategic, and a court must not second-guess counsel's strategy."[12] *Id.* at 1298 (finding that counsel did not perform ineffectively by failing to raise an evidentiary objection at trial). Thus, a fairminded jurist could agree with the state court that

---

[12] It bears mentioning that Attorney Collins had approximately thirty years of criminal defense experience (Doc. 55-2 at 417), and "[w]hen courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." *Chandler*, 218 F.3d at 1316.

Attorney Collins' strategic decision not to object was within the wide range of professionally competent assistance. *See Smith v. Pulaski SP Warden*, 809 F. App'x 712, 717 (11th Cir. 2020) (finding that a petitioner who argued counsel was ineffective for not objecting had failed "to overcome the considerable deference we owe, both to trial counsel's strategic decisions and to the [state court's] resolution of the claim"). Petitioner, therefore, has not established that the state court unreasonably applied *Strickland* by finding that Attorney Collins' performance was not constitutionally deficient.

Even if Petitioner had established deficient performance, he would still not be entitled to habeas relief because a fairminded jurist could agree with the state court's finding of no prejudice under *Strickland* prong two. As previously discussed, Inv. Todd's testimony that Petitioner provided him a list of alibi witnesses was clearly admissible. The same is true for the testimony that Inv. Todd met with or attempted to meet with those alleged alibi witnesses. Thus, regardless of whether the jury heard Inv. Todd say that none of the people supplied an alibi for Petitioner, the jury would have known (1) Petitioner had provided a list

of potential alibi witnesses to investigators, (2) the investigators followed up with those potential alibi witnesses, and (3) none of those potential alibi witnesses testified at trial regarding Petitioner's whereabouts at the time of the kidnapping. The damaging point of Inv. Todd's testimony was that it revealed Petitioner had no alibi. That same point would have been clear to the jury even without Inv. Todd's answer to the prosecutor's last question. As such, there is no reasonable probability that the jury would have reached a different verdict had Attorney Collins successfully objected to Inv. Todd's testimony.[13] Accordingly, Petitioner is not entitled to habeas relief on this ground.

---

[13] There is one final thing to mention with respect to Ground Four. Petitioner mentions that Attorney Collins also should have objected when the prosecutor discussed Inv. Todd's alibi witness testimony during her closing argument. Although Petitioner did not make this argument in his third amended § 2254 petition, he arguably made it in the supporting memorandum attached to that pleading. (Doc. 49-1 at 22-23). He also made it in his Rule 3.850 motion. (Doc. 55-2 at 97-100). To ensure completeness, the Court will briefly address it. *See Dupree v. Warden*, 715 F.3d 1295, 1299-1300 (11th Cir. 2013) (finding that the district court erred by failing to address a claim that was cursorily mentioned in a supporting memorandum of law attached to a *pro se* § 2254 petition). According to the trial transcript, the prosecutor mentioned Inv. Todd's alibi witness testimony in rebuttal as a response to Attorney Collins' closing argument. (Doc. 55-1 at 523-24, 530-31, 539,

E.    **Ground Five (verbatim): "Petitioner Attorney Kevin Alarez for Appellate was deprived of his right of effective assistance of counsel when his Attorney failed to Impeach Trial counsel at Post-Conviction Hearing. Counsel failed to take used of judicial notice's records, that was granted by the courts. Counsel also failed to call witness from his witness list. In violation 6 and 14 Amendments Due Process Rights of the United States Constitution."**

**Ground Six (verbatim): "Attorney Roberts Terry failed to raise all 11 ground from the Petitioner 3.850 Hearing that was denied by the courts. In violation of the 6 and 14 Amendments due Process Rights of the United States Constitution."**

In Ground Five, Petitioner claims that he received ineffective

assistance of postconviction counsel during the state court Rule 3.850

---

546-48). And what the prosecutor said in her rebuttal closing argument about Inv. Todd's testimony was not objectionable. Her argument was responsive to the argument made by Attorney Collins, and it was consistent with the evidence introduced at trial. Thus, there was no basis for Attorney Collins to object to the prosecutor's closing argument. *See United States v. Young*, 470 U.S. 1, 11-13 (1985) (holding that when a prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and the prosecutor "[does] no more than respond substantially in order to right the scale," then such comments are not improper); *see also Miller v. State*, 926 So.2d 1243, 1254-55 (Fla. 2006) ("[A]n attorney is allowed to argue reasonable inferences from the evidence and to argue credibility of witnesses or any other relevant issue so long as the argument is based on the evidence."). There is no merit to Petitioner's claim that Attorney Collins was ineffective for not objecting to the prosecutor's closing argument.

proceedings. Similarly, Petitioner claims in Ground Six that he received ineffective assistance of appellate counsel in his state postconviction appeal. (Doc. 49 at 14-15). These claims can be easily rejected because § 2254 makes clear that the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254." 28 U.S.C. § 2254(i). As the Eleventh Circuit has recognized, "there is no constitutional right to counsel in post-conviction proceedings, even in capital cases, which necessarily means that a habeas petitioner cannot assert a viable, freestanding claim for the denial of the effective assistance of counsel in such proceedings." *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 944 (11th Cir. 2014). Accordingly, there is no merit to Petitioner's arguments in Grounds Five and Six.[14]

---

[14] Petitioner has attempted to avoid that conclusion by citing *Martinez v. Ryan*, 566 U.S. 1 (2012). (Doc. 62 at 21-26). But *Martinez* does not help Petitioner. *Martinez* dealt with whether ineffective assistance of counsel by a prisoner's state postconviction counsel was cause to overcome a procedurally defaulted claim of ineffective assistance of trial counsel. *See Davila v. Davis*, 582 U.S. 521, 524-25 (2017) (explaining that in *Martinez* the Court announced a "narrow exception" that "treats ineffective assistance by a prisoner's state postconviction counsel as cause to

## V.    Conclusion

For the reasons above, Petitioner's 28 U.S.C. § 2254 habeas corpus

petition lacks merit and should be denied.

## VI.    Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United

States District Courts provides that "[t]he district court must issue or

deny a certificate of appealability when it enters a final order adverse to

the applicant," and if a certificate is issued "the court must state the

specific issue or issues that satisfy the showing required by 28 U.S.C.

§ 2253(c)(2)."  Rule 11(a), Rules Governing Section 2254 Cases.  A timely

---

overcome the default of a single claim—ineffective assistance of trial
counsel—in a single context—where the State effectively requires a
defendant to bring that claim in state postconviction proceedings rather
than on direct appeal").   In the current case, there is no argument that
Petitioner procedurally defaulted an ineffective assistance of trial
counsel claim based on the ineffectiveness of his postconviction counsel.
*See Gore v. Crews*, 720 F.3d 811, 816 (11th Cir. 2013) ("By its own
emphatic terms. . .*Martinez* is limited to claims of ineffective assistance
of trial counsel that are otherwise procedurally barred due to the
ineffective assistance of post-conviction counsel.").  Moreover, Petitioner
is incorrect to the extent he believes *Martinez* supports the argument
that he received ineffective assistance of postconviction appellate
counsel.  The Supreme Court has stated that *Martinez*'s holding "does not
concern attorney errors in other kinds of proceedings, including appeals
from initial-review collateral proceedings."  *Martinez*, 566 U.S. at 16.

notice of appeal must still be filed, even if the Court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

"Section 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting § 2253(c)(2)).  "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his [or her] constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. 100, 115 (2017) (citing *Miller-El*, 537 U.S. at 327).  The petitioner here cannot make that showing.  Therefore, the undersigned recommends denial of a certificate of appealability.

Under Rule 11(a), "[b]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a).  Consistent with that rule, if either party objects to the recommendation regarding the certificate of

appealability that party may submit arguments on that issue to the district judge in an objection to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED** that:

1.    Petitioner's motion to voluntarily dismiss Ground Seven (Doc. 61) be **GRANTED**.

2.    Petitioner's third amended 28 U.S.C. § 2254 petition (Doc. 49) be **DENIED**, and this case be **DISMISSED.**

3.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 5th day of December 2023.

s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of the Report and Recommendation.  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.